and Ms. Lowery. Is that right? Start with you. Good afternoon. My name is Marsha Lowery, and I am from California. My name is Richard Walters from Charleston, West Virginia. I appear here today on behalf of the over 6,000 children in the West Virginia foster care system. This case directly addresses the issue of whether the federal court should abstain from exercising jurisdiction because the children have ongoing state court proceedings to review their foster care placements and case plans. These are the same kinds of proceedings mandated by federal law and the same type of proceedings that take place in other jurisdictions where abstention has been declined. The district court below abused its discretion in a number of ways. It disregarded the clear instructions of the Supreme Court in its latest abstention case in 2013, Sprint. It ignored a number of cases in other circuits, both district courts and appellate courts, that reject abstention in similar cases asserting systemic violations in the state foster care system. Relying on Sprint cases, relying on pre-Sprint cases that support abstention, while ignoring precedent that does not support abstention. By relying on a middle sex analysis without first finding that this case falls into the three categories that were set out in Sprint as the only categories in which abstention is permissible. And then by relying on more of these sims, a Supreme Court case that abstained in a federal case that challenged the state statute authorizing the removal of allegedly abused children from their parents. It should be noted that the Texas district court and then the Texas appellate court upheld a similar challenge to what we have here to the state foster care system in Texas. The abstention doctrine in Younger has been clarified by the Supreme Court in three important decisions. Initially in middle sex in 1982, in NOPSI, New Orleans Public Service versus New Orleans in 1989, and most recently in Sprint, which was in 2013. In Sprint, the Supreme Court said that there were three and only three categories of state proceedings which justify Younger abstention. Can I ask you just a question? I do think you're right that Sprint sort of certainly clarified the law in this area and that after Sprint, I think courts tend to start right where you are with, does this state proceeding fall within one of the three exceptional categories? But it strikes me that the heart of your argument is less about the nature of the state proceedings and more about the nature of your federal challenge. And your main argument, I think, but tell me if I'm wrong, is that whatever the nature of these state proceedings, the key thing is that our federal claim doesn't intersect with them at all. We're not challenging the judicial process. We're not challenging the outcomes. We're not challenging the proceedings that get these kids into the foster care system. So whatever is going on in state court, it doesn't make any difference because we're not interfering with that. Can we start there? Yes, Your Honor. I'm sorry, that wasn't a rhetorical question. Would you start there? Can we start there as a court? Yes, Your Honor, I think you can and I think you must. And in fact, there is nothing that we seek in the federal suit that in any way challenges or interferes what goes on with the state proceedings. They are different proceedings entirely. The state court proceedings are about individual children who have various issues. They are about whether or not a child will be removed. What we're challenging here is the operation of DHHR. The DHHR is the agency. I think you're right in part, right? Your complaint challenges a number of things that just have to do with the operation of DHHR staff, staffing and the availability of placements and things like that. But I think maybe what got the district court concerned is this request for a monitor to be put in place who's going to monitor whether each child actually is placed in the least restrictive, most family-like setting. And that's a requirement under state law that a state judge makes. A state judge decides that. And I think the district court was concerned about putting a federal monitor in place who then is going to double-check the state court judge and make sure that those things are happening. Now, we still have to get through the three sprint categories, right? But the district court was concerned, I think, about the breadth of your complaint. It's not just about DHHR. Right. Thank you, Your Honor. That's exactly the point of this case. We do not in any way challenge anything that's going on in the state court proceedings, nor do we suggest that in order to determine whether DHHR would be violating the law, that the state court decisions would be reviewed. So, in fact, Your Honor, Rule 53 of the Federal Rules of Civil Procedure require that a special master can be appointed. We're not asking for that at this point. But, in fact, in other cases similar to this one, almost exact in their descriptions, other state court cases, including in Texas where the Fifth Circuit upheld the fact that there would be no abstention, those cases do not look at state court proceedings, do not examine whether or not one child has been appropriately placed, whether the case plan is appropriate. They have focused solely on the administrative agency of the state that is responsible for providing, basically, if you will, the guts of the system. That is, the state court judges choose among what is available. They don't create what's available. They don't determine that a caseworker has too many cases. DHHR decides what services are available, licenses the services that are available, oversees the services that are available. Can I ask just a sort of legal theory question just to get your perspective on it? What do you think is the continuing viability of O'Shea? And that's the case about trying to kind of get around younger by not interfering in a current proceeding, but requiring state judges to do certain things in future proceedings. What is O'Shea? What's left of O'Shea after Sprint? I think that O'Shea is still viable. O'Shea was talking about ongoing processes in this criminal court. And the only way that they could really monitor the ongoing processes in the criminal court was by the kind of review that O'Shea found was objectionable. We're not talking about that. We are talking about a system in which DHHR would provide the resources and the placements and the foster homes and the caseworkers that the judges in the state court proceeding would be able to benefit from as they chose individual places for the child. We are not ever talking about the review of state court decisions either now or in the past. Can I ask you a question? And it's picking up on Judge Rushing's earlier question about the request for injunctive relief. What if I thought just hypothetically that a few, but only a few, of the requests for injunctive relief related to the references to placements? You would require that the agency ensure that certain placements were either the most integrated setting or the least restrictive setting. What if I thought that those could be construed as requiring federal court review of state court placement approvals? Would the appropriate response then be to dismiss the whole case on abstention grounds, to dismiss part of it, to instruct the district court, like this case goes forward, but be careful when you write the injunction not to write it that way? What should we do if we think there's some ambiguity in a few of the injunctive requests? Your Honor, I think one of the important factors that a district court has to take into consideration is what kind of relief to provide. And in fact, in a few cases, some of the relief that has been requested, and we don't think we have requested any relief that is impermissible, but some of the relief that has been requested has not been allowed. But in order to make that determination, ultimately, the court has to look at the details of the relief. And so, for example, we think that the district court listed a parade of horribles, essentially, and said, well, this will really interfere because even if you're not directly directing the injunction against the state court, the state court judge is going to think, oh, this isn't the right, maybe somebody's going to say this isn't right placement for a child. That's not the way this case works. This case was decided, of course, on a motion to dismiss. I think all of that, all of those concerns that the court is expressing, obviously legitimate concerns, are things that will be brought out as we go forward, if we are allowed to go forward. And I think it would be very clear to the district court what's permissible and what might not be permissible if we seek anything that's not permissible. In other circumstances, in other cases that have refused to abstain, that has been done. I think it certainly could be done here because we are at, essentially, a preliminary stage of the case. Because all the discovery hasn't been completed, we can't be clear about exactly what relief will be necessary. Let me ask you a little bit about mootness. Since the district court's decision, two more named plaintiffs have aged out of foster care, and one of them, Jonathan R., is the last remaining representative of the kinship subclass. If we were to agree with the district court that exceptions to mootness do not apply, would you be able to substitute another named plaintiff to represent the subclass? Yes, Your Honor, we would be able to substitute necessary plaintiffs. I take it that you endorse the relate back theory. We do. Yes, Your Honor. We do believe relation back applies here, particularly because the district court below had the class certification motion for eight months and did not decide it. But were the court not to accept that position, not to accept our position on that, we would add new plaintiffs to adequately represent the class and the subclasses. One other question on a different subject matter. Do you know of any cases besides Judas and Penzol where the Supreme Court has approved abstention under the younger third category, that is, to regular operation of state judicial system? Are you aware of any other cases? Are there any cases in which the court has approved abstention under that category? Yes. Not that I'm aware of, Your Honor. Can I ask one clarifying question on the mootness about the two additional plaintiffs who the state said have aged out while it's on appeal? I didn't see it in your reply, Bruce, so I just want to get a confirmation. Do you agree that they have aged out as a factual matter? Your Honor, the facts are the facts. I just wanted to confirm. We don't want to go on just one side's presentation. Understood, Your Honor. Understood. One of the young people is 18 but is still in DHHR custody. And so I believe that they have not – the state had not – sorry, defendants have not moved against that youngster. But we would be able to substitute live plaintiffs because this is, frankly, a very serious ongoing problem in the state of West Virginia, the fact that there are serious, serious problems in the foster care system. And so we would have no difficulty finding plaintiffs. Can I ask you a question about the mootness issue? Because I think I must be missing something because there's a lot of briefing about mootness, but I'm not sure I understand why it matters if some of the named plaintiffs but not all of them have kind of mooted out of the class, given that you can amend and add new class members. Why does it matter? Well, Your Honor, we want to be sufficiently representative and we also have subclasses. Right. But given that you can – I thought your answers to the other questions indicated, and this makes sense to me, that you can always amend or supplement your complaint to add new representatives. Yes, that's right. So I guess I'm not understanding, given that this case is going forward, regardless, why does it matter whether – you know, there's a whole argument that even when kids age out, that the exceptions to the mootness doctrine ought to apply, but I don't understand what's at stake. And I'm hoping you can just tell me practically why that matters. Your Honor, I'm not sure that it does. Okay. I'm not sure that it does. I think that this is a very live controversy in the state of West Virginia and a very live issue going forward. And it needs – we believe it needs to be dealt with as we – so I will go on with my argument then. Yep. Yeah, I think your time is up, but you do have time reserved for rebuttals. Okay. Thank you, Your Honor. I didn't – I was looking for the clock and I didn't see it. Thank you very much. Bye. Thank you. Mr. – is it Kish? Aish, Your Honor. Aish, sorry. Okay. Thank you. May it please the Court, Philip Aish for appellees, which are various state officials and agencies of the state of West Virginia. At the outset, I'd like to address an issue that plaintiffs raised in – that amici raised in their briefs about the implications of this particular abstention dispute. This case is not about whether foster children can ever bring federal claims in federal courts. There are certainly circumstances where foster children can bring such claims. Abstention would not stand in the way of any claims that focused on executive action, for example. But that is not this case. In this case, the plaintiffs filed a complaint with no consideration for the role that the West Virginia circuit courts play in the West Virginia – Your position is that this complaint does not focus on executive action? Yes, Your Honor, especially when you look at the relief in paragraph 405. There are – the complaint – the complaint's about 100 pages long. There is substantial criticism of the executive agency in the complaint. But if you actually look at the claims themselves and what they allege violate federal law and the relief they request, the four pages of injunctive relief in paragraph 405, the overwhelming majority is about issues and decisions that are the responsibility of the West Virginia circuit courts. And it's not just West Virginia circuit courts approving recommendations or reviewing decisions. West Virginia circuit courts actually issue orders and are the ultimate entity responsible for those decisions. And I would also add it's not just placements that West Virginia circuit courts are responsible. West Virginia circuit courts, they are responsible for approving all placements, which includes a best interest determination and a determination that they're the least restrictive setting. This case is talking about systemic relief. You submitted one instance where a state circuit judge issued an order that gave relief to that child, but it doesn't – of the nature that they're seeking. Are there any other orders out there other than that one order? Yes, Your Honor. I believe we've – we actually cited several cases where systemic relief was ordered. Can you give me a number? Yes. A number – I think we cited four or five, but I can – Is that enough to solve the systemic problem in West Virginia? Well, I would contend, Your Honor, that just because there's four – there's been four or five cases that have addressed – that we cited that have addressed systemic issues in West Virginia, I don't believe that goes to the key question, which is whether the plaintiffs have an adequate opportunity to raise their claims in state court, and they certainly do. Well, I mean, the point I was trying to make to you is that if there are a lot of these systemic orders out there, that's one thing if we're talking about younger extension. But if there's only one or two, it looks to me like West Virginia's not doing much about their problem up there. Your Honor, I strongly disagree with that characterization. The West Virginia Supreme Court, nearly 20 percent of its docket is now abuse and neglect cases. Nearly 20 percent of the circuit court docket is abuse and neglect cases. The West Virginia – Your Honor, just to be clear, 20 percent is individual – Correct. Individual. The Supreme Court of Appeals also has a robust court improvement program through which it trains both guardian ad litems, who are lawyers, and circuit courts. I mean, I could sort of go on and on about the efforts that the state of West Virginia has made to improve the child welfare system, both the courts and the agency. As the court is likely aware, the West Virginia child welfare system has exploded in population over the last several years. It has increased by 60 percent, and that's a very tragic and unfortunate situation. But the state of West Virginia, the executive agency, the legislature, the courts have all worked diligently and together to resolve – to improve the system and to address that explosion in the child welfare program. And it's not perfect, and there's many challenges, but involving the federal court to add another layer of oversight on top of that process is not – would not be a productive solution here. But I would – But, counsel, I mean, particularly after Sprint, the – you know, we very much contemplate that there may be overlapping and parallel state and federal proceedings. That is the norm. There's nothing wrong with that unless you fall within one of these three exceptional – well, unless there's interference and unless you also fall within one of these categories. And I wanted to talk to you about the categories because you emphasize in your brief the criminal or quasi-criminal nature of the juvenile delinquency side of these proceedings. And I want to bracket whether that's a fair characterization. But in the district court, as I understand it, you argue that those cases are not part of this case at all. They're not part of the class. They're not in front of the court. And the district court didn't resolve that issue. It left that open, and it said, I'm just going to focus on the abuse and neglect side. So how can we, given that that is a question in dispute on which the district court hasn't ruled, I don't see how we can kind of assume that those cases are part of this case. Well, Your Honor, I think they may not be part of this case. Well, as an initial matter, the class definition includes children who are in DHHR custody. I know, but there was this big fight. I don't fully understand the argument below, but I do understand that the district court thought it was hard enough that it was just not going to reach it. And I understand. We don't know whether the juvenile delinquency side of things is before us today, right? Yes, Your Honor. And I think there are no named plaintiffs who came into custody through juvenile justice proceedings other than the named plaintiff who has been mooted. So for today's purposes, you need to persuade us that the abuse and neglect side of things is criminal or quasi-criminal. Yes, that's correct, Your Honor. Or I would also contend that they are also potentially in the third category of cases. And I would add that going to Judge Rushing's question at the outset, O'Shea has not been limited by sprint. And we think that even if Younger doesn't… Hasn't? I mean, the court was really clear. They said these three categories and, quote, no further. I mean, they're limiting us to these three categories. Now, they didn't overrule any precedent. They didn't overrule O'Shea. But does that limit O'Shea to the three categories, right, to criminal case, state criminal cases, quasi-criminal or this sort of interference with essential judicial enforcement of its orders? Does it limit O'Shea to those categories? No, I don't believe it does. I believe O'Shea is still… Now, with the caveat that the Supreme Court has also said these categories are not rigid pigeonholes, I believe, is the phrasing that the court has used. We believe O'Shea is a different but related doctrine that can lead a court to abstain where the ongoing interference with state court proceedings would be so substantial that it would require regular interruptions of state court proceedings. With any state court proceedings, not just the three categories. Well, I think there needs to be an important state interest in it, but I don't think it's limited by the three categories. I don't think the Supreme Court has held that. But O'Shea was a criminal case. O'Shea was a criminal case, but there have been several circuits that have extended O'Shea to civil cases. And I don't believe this court has, but we think it would be appropriate in this case to hold. This is a genuine question. I can't remember. Is O'Shea the one where they literally sued the state judges and magistrates? They were defendants about their bail practices? Yes, that is the one. They sued a lot of people, including the people you – Interference was about as direct. Interference was about as direct. But I would also add, though, that all these questions go to an important question in this case, which I think is the plaintiff's position is that younger O'Shea abstention never applies in abuse and neglect proceedings. Because it doesn't fit into the three categories, it never applies. If that's the case, that means a plaintiff could file a federal action that directly – or the injunctive relief actually directly states we are seeking an injunction to prohibit a state court judge from removing children from biological families. And younger would play no role. That is not the law, and that's directly contrary to Moore v. Sims. Moore v. Sims made clear there are at least certain circumstances where abstention is appropriate in abuse and neglect proceedings. Moore v. Sims has never been overruled. It was cited favorably in both NOPSI and – Moore v. Sims seems really different to me because that really was the state sanctioning the abuse of parents by taking away the children, and then the parents go into federal court to try to stop that state proceeding. And so it seems different both in the kind of interference we're talking about, but also in the sanctioning nature of the proceedings. They were getting those parents in trouble. They weren't going to go to jail, but they were going to lose custody of their children. Your Honor, there are some different features of Moore v. Sims. But I think the – I guess what I'm getting at is that the different feature goes directly to whether it's quasi-criminal or not. Your Honor, but three of the plaintiffs in Moore v. Sims were the children, and they certainly weren't being sanctioned. And the Supreme Court still – People were being sanctioned in that proceeding. It was the parents. In these circuit court proceedings, people are being sanctioned. There's a unitary abuse and neglect proceeding where the abuse and neglect decision is being made. That's a sanction where the parental termination decision is being made. That hearing that makes those decisions as well as the decisions about what services the child should receive, if the child is removed from the home, what placement, those are all single proceedings before a single court. It's a single proceeding. So I would contend that there are sanctions going on in these proceedings. And in Moore v. Sims, there was relief sought that didn't directly implicate the – But that's all kind of precedes the part where they are in state custody, which is what the plaintiffs are suing about. That part of the proceeding doesn't seem to be ongoing. Do you know what I'm saying? Like, isn't that sort of kind of history at this point? So I'm not sure I follow the question, but I think I disagree with the characterization. So oftentimes, a child is not removed from the home until a circuit court issues that order. The only time a child can be removed from a home is when there's – unless there's an emergency issue and there's, like, a 48-hour rule. But then the child is removed on a finding of endangerment, and then the circuit court retains jurisdiction and has – Are there any proceedings after that point, the ongoing proceedings? Are there any of those that would be fair to describe as sanctions? At that point, aren't we just talking about the best interest of the child? No one's getting in trouble. They're just trying to do what's right for the children. So I would say if after parental termination, there may be no longer a sanction going on. The ongoing proceedings don't have anything to do with sanctioning. I would disagree with that, again, because oftentimes parental termination – there's many children in the West Virginia foster care system whose parents' parental rights are not – are never terminated. And they're in hearings for a year, two years. That's on the longer end, but there's a service plan going on for the parent. The parent's trying to earn their right to come back. They're providing services to the child. So the – now, some of the named plaintiffs in this case, the parental termination wasn't even contested, so that piece ended early. But there's many cases where that piece goes on for a year or two and never ends until the child is returned to the family. And reunification is still the primary goal in this case. So most – well, I don't know if I can say most, but a large number of foster children in West Virginia are reunified with their family. And in that case, the sanction-ish part of the hearing never ends. It's never ended. So the – turning back to some of the interference issues, as I mentioned earlier, I think paragraph 405 of the complaint, where the plaintiffs seek injunctive relief. In our view, the overwhelming majority of that relief would interfere with ongoing circuit court proceedings. Although much of the allegations in the complaint, before you get to the actual description of the claims and the relief, are critical of DHHR and the governor, when you look at the actual relief the plaintiffs seek, it directly interferes with ongoing circuit court proceedings. So we've already talked about placements. They seek a number of requirements for children's placements. They also seek an injunction that all children's case plans be adequate and individualized. Well, circuit courts are responsible for reviewing children's case plans, and they review those case plans and approve them every 90 days. Plaintiffs also seek an injunction that all children must timely receive services and treatment set out in their case plans. Again, circuit courts review those, and they make decisions on them every 90 days. And in fact, there's cases we've cited in our brief where the circuit court holds DHHR in contempt if DHHR doesn't comply with the case plan. All children must receive services to the extent required by, quote, reasonable professional standards. Again, those are decisions being made by the circuit courts in this case, in these cases. It's impossible to see how the overwhelming majority of that relief would do anything other than interfere with those proceedings. I think this is highlighted if you actually look at a named plaintiff's case. Can I just – I just want to make sure I understand your position. So your view is that the overwhelming majority of the sort of specific injunctive requests would interfere. What if, just hypothetically, like one-twentieth of them might interfere? Same result? Like, does it matter to you that it's the overwhelming majority or would just one require that we dismiss the whole action? I think it does matter, Your Honor, and frankly, that's something we've wrestled with internally and discussed extensively. I think it would be one thing – I think the extent – it would be one thing if there was one claim that interfered or one piece of relief that interfered. I think in that case it might be appropriate for a district court to dismiss that one claim. But in a case like this where the overwhelming – where there's four pages of paragraphs of injunctive relief and the overwhelming majority would interfere and there's no indication that the complaint took any consideration for the role that the circuit courts play in the state of West Virginia, I don't think it's reasonable to expect the district court to sort of rewrite the complaint and wade through those four pages and say this paragraph stays, that paragraph doesn't, this – I would also add that until oral argument here, the plaintiffs have never raised that argument in their briefs. They have never – nowhere in their briefs do they even mention, let alone quote or anything in paragraph 405 of their complaint or explain why it doesn't interfere. So I think there's an issue as to whether they've properly raised a sort of partial abstention issue at all. But also I'm not sure that's the relief they even want. I'm not sure the plaintiffs are interested in some of the relief surviving. It's always been our understanding that the only relief that the plaintiffs are interested in this case is sort of wholesale relief that applies across the board to West Virginia. That's so weird. I mean, just looking at the complaint, it seems to me and the request for injunctive relief that they would be very interested in things like staffing levels and things like training for kinship placements. I mean, there's a lot of this case that has literally nothing to do with what happens in court. So, Your Honor, I disagree that that has literally nothing to do with what happens in court. Let's take kinship training, for example. Now, requiring DHHR to offer kinship training, which, by the way, it already does, that's not the relief requested in here. It's requiring the kid that all kinship settings receive that training. That's a major problem because a lot of children are placed in kinship homes that are the appropriate placement for them. But the parents, they're not foster parents. They've had kids. They don't want to go through kinship training. And circuit courts order that you be placed with your uncle, who you have a preexisting relationship with, regardless of whether your uncle takes that kinship training or not. And West Virginia offers financial incentives for kinship homes to become certified and go through that training, and many, many homes decline to do it. So requiring kinship placements to accept training does interfere with ongoing circuit court proceedings because it would prohibit a circuit court from ordering a child to his or her uncle's house if the uncle refused to engage in the training. With respect to caseworkers, again, I think it's on the less-interfered side, but circuit courts in West Virginia have ordered caseworkers off cases when they don't think they're appropriate. They've replaced caseworkers. In one case we cite in our brief, in the 90s, they replaced DHHR with an independent agency caseworker. If a federal court were to impose a 15-case limit and a caseworker reached that limit, DHHR would have to take that caseworker off one of the 15 cases and put aside that that would require hundreds of more caseworkers that we can't hire. And a circuit court might have something to say about that, about whether that caseworker who's been with the child for six months or a year should be taken off the case. I say all this, this is an extraordinarily intertwined system. What DHHR, in the state of West Virginia, what DHHR does and what the circuit courts do is, and you can look at the statute, you can look at the judicial benchmark, which you may not want to look at the judicial benchmark. It's like 800 pages, but it is very hard to separate the working relationship between DHHR and the circuit courts. And it's very hard to issue injunctive relief that wouldn't interfere with circuit court proceedings. Now, I could come up with a couple that I think might, and I think there's a couple pieces of their relief that doesn't interfere. But I think a lot of their relief that looks like it doesn't interfere would, in fact, interfere. I see I only have a few seconds remaining. I haven't talked about the mootness issue. With respect to mootness, we're prepared to believe those are straightforward issues, and we're prepared to rest on our briefs on those. So I guess in conclusion, we would urge the court to affirm. We think the district court did not abuse its discretion in abstaining in this case, given the extent to which the plaintiff's claims and the requested relief would interfere with ongoing circuit court proceedings, and the state's substantial and important interest in proceedings that involve children in their custody and the opportunities that plaintiffs had to bring these claims to state court. Okay, no more. Thank you. Your Honor, in filing this complaint and proceeding with this case, we do not in any way want to suggest that the circuit courts are not doing their due diligence and fulfilling their responsibilities. The circuit courts have limitations on what they can do. They do not control what DHHR provides. The legislature can pass statutes, and the state can issue policies, many of which are absolutely fine. But if DHHR does not implement those policies and doesn't implement the statutes, then the children are left with a system that is seriously and unconstitutionally inadequate. They are separate systems. We do not criticize a circuit court judge for any decision. We do not want to examine those decisions. But DHHR is substantially failing to protect the constitutional rights of children after they are in the department's custody. These children, whether they are children who are abuse-neglect children or whether they are delinquency children who have been placed with the commissioner of HR, those are children who are subject to the provisions that DHHR has made with regard to placements, with regard to kinship homes, with regard to the supervision of homes, with regard to every aspect of what happens to these children once they are in custody. And that is what we are complaining about. And, in fact, if you look at what we asked for in relief in paragraph 405, as my colleague references, most of these, if not all of these things, we would argue, and I think it's true, that all of these things are things that DHHR only has the control over. There have been a few cases where a circuit court judge has noticed that the caseloads are too high. It wasn't a complaint raised by a child. Mr. Pysh talks about the fact that children can represent their interests in the court. They cannot. Parents can represent their interests. Nothing wrong with that, of course. But by Mr. Pysh's reasoning, the children in custody in the state of West Virginia would not have the right to bring a suit if DHHR had only, they have 6,000 children in custody, supposing they had only 100 caseworkers. DHHR would not be able to complain, would not be held accountable for that under Mr. Pysh's reasoning. So what we are complaining about is the fact that there are two systems. Circuit court is doing its job as best it can with what exists in the system, and the DHHR is not providing what the system needs. They are systemic claims. The DHHR needs more placements. It needs more caseworkers. It needs better systems. It needs to train people better. All of those things are not dealt with at a systemic level by the circuit court. The cases that Mr. Pysh refers to of systemic decisions by the circuit court are not brought by children and are very few, if any. Most of the cases cited by Mr. Pysh, most of which were unpublished, are cases in which children were either custody cases or cases having to do with parental right issues. Parents have an absolute right to raise those issues, of course. That's not what this case is about. Can you respond to, he said, your friend on the other side said, if we accept your reading of Sprint and the three categories and say that this case doesn't fall into one of those categories, then a plaintiff could file a lawsuit seeking to enjoin a state court judge from placing that child in a particular placement because we've said these state court proceedings don't qualify under any of the Sprint categories. Can you respond to that? Yes, Your Honor. That would be wrong. I don't think that that would be at all possible, and that's not the kind of decision we're looking for from the court. We are talking about serious systemic problems that exist in the foster care system as a result of DHHR not being able to, or whatever else is going on, provide the services and placements kids need. Which category would that hypothetical case, which Sprint category would that fall in? It might fall into the quasi-criminal proceeding. It might fall under Rooker-Feldman if a circuit court has placed it. It can't be Rooker-Feldman because there's no judgment. It's seeking to enjoin a future action, and then it's not quasi-criminal because we've already talked about how proceedings against the child aren't quasi-criminal. If a child seeks to enjoin placement in a particular home, that's not an action against the child. Your Honor, I would suggest that the proceedings are not quasi-criminal as they relate to children. They are quasi-criminal solely as they relate to parents. Right. They are not. So a child who wanted to enjoin a state court proceeding, placing the child in a home, I think would have a Rooker-Feldman issue. That is, there would be a state court decision, and the child would ask a federal court to review a state court decision. I think there would be no basis to do that. I think that that has to go through the state court system. I mean, I'll let you move on, but that's not Rooker-Feldman, right? Rooker-Feldman says you have a judgment that has injured you, and you're suing in state court because of the injury caused by that judgment, not that you're suing to enjoin future action. So we're still kind of stuck with how does the federal court say, oh, it's not my place to enjoin the state court from making this certain family law decision. Right. Your Honor, I think that that is, frankly, I think a preposterous suggestion, if you'll forgive me for saying that, by Mr. Paisch. I think that children would not have any basis to challenge a particular placement except through the state court system. It is not a quasi-criminal proceeding against a child, and I don't think that that would be possible. And if they were going to do that, I would think that that would not get very far. But I think that a child who is challenging an individual placement would not have the basis to do that. Your Honor, I think that what the court does here is extremely important to the children of West Virginia. And I think that the situation in West Virginia is a situation that raises very, very serious problems. I think that this case does not fall into any of the sprint categories. I think there was inappropriate abstention by the district court expanding sprint far beyond what was contemplated by sprint. And I think that it is impermissible and objectionable, and it should be reversed by this court. That would be what we would want to conclude with here, and we urge the court to consider that seriously. Thank you very much. Thank you very much. Thank you both. We are sorry that we can't come down and shake hands with you, as would be our custom, but we very much appreciate your help today. Thank you.
judges: Pamela A. Harris, Allison J. Rushing, Henry F. Floyd